IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| WILLARD DEON STONE | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) CASE NO. 4:18-cv-1207-GMB |
| ANDREW M. SAUL,[1] Acting | ) |
| Commissioner, Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION AND ORDER**

On April 30, 2015, Plaintiff Willard Deon Stone filed an application for supplemental security income. His alleged disability onset date is March 1, 2015. Stone's application for benefits was denied at the initial administrative level. Stone then requested a hearing before an Administrative Law Judge ("ALJ").[2] The ALJ, Jerome L. Munford, held a hearing on July 10, 2017. He denied Stone's claims on October 4, 2017. Stone requested a review of the ALJ's decision by the Appeals Council, which declined review on July 18, 2018. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 5, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Saul is substituted for Nancy Berryhill as the proper defendant in this case.

[2] Stone also filed an application for disability insurance benefits on April 15, 2015, but Stone withdrew his request for those benefits. R. 243. Accordingly, the ALJ addressed only Stone's application for supplemental security income. R. 23.

(the "Commissioner") as of July 18, 2018.

Stone's case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Under 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the full jurisdiction of a United States Magistrate Judge. Based on its review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the decision of the Commissioner is due to be REVERSED and REMANDED to the ALJ for proceedings consistent with this opinion.

## I. STANDARD OF REVIEW

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the

court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255 F. App'x 374, 375–76 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the

Commissioner's conclusions of law are valid. *Id.*

## II.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).  Stone bears the burden of proving that he is disabled, and is responsible for producing evidence sufficient to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a).  The Commissioner must determine in sequence:

(1) Is the claimant presently unable to engage in substantial gainful activity?
(2) Are the claimant's impairments severe?
(3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the claimant unable to perform her former occupation?
(5) Is the claimant unable to perform other work given her residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). "An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability. A negative answer to any question, other than at step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

## III. FACTUAL BACKGROUND

Stone was 46 years old at the time of the ALJ's decision. R. 46 & 48. Stone lives with Sandra Frank, a friend who appears to be his common-law wife, in a home in Crossville, Alabama. R. 46, 51 & 299. Stone has a sixth-grade education. R. 46. While in school, he was in special education classes. R. 46–57. He cannot read or write. R. 47.

When he applied for supplemental security income, Stone alleged that his back and the inability to read and write prevented him from working. R. 189. The record also reveals that Stone may be suffering from severe symptoms of depression and anxiety. R. 301.

In 1995, Stone was employed a sheet rock hanger. R. 48. He worked as

welder's helper from 2009 through November 1, 2010, his last employment. R. 189–90. Stone attempted to lay carpet for a couple of months in 2015 but had to quit because his pain prevented him from doing the job. R. 48 & 56. He has not engaged in substantial gainful activity since November 1, 2010. R. 26.

Sandra Frank, Stone's fried, completed a function report for Stone on May 8, 2015. R. 197. She reported that he was unable to handle his own finances, had no hobbies and interests, and handled stress by "just stay[ing] quiet." R. 200–03. Frank also reported that Stone needs financial help to afford medical treatment. R. 204.

The majority of the medical evidence in the record comes from physical evaluations regarding Stone's back and blood pressure, but the ALJ also sought the opinion of two psychologists. Apart from these opinions, there is no other evidence of mental health treatment or evaluations in the record.

Pursuant to a referral by Disability Determination Services, licensed psychologist June Nichols met with Stone on June 24, 2015 for a consultative evaluation. R. 298. During the examination, Nichols noted that Stone's mood was depressed and his affect was sad. R. 299. She further found that he suffers from severe symptoms of depression and that he experiences daily anxiety and panic attacks. R. 301. She observed that his thought processes were slow. R. 300. And she determined that he functions within the extremely low range of intellectual ability. R. 300. Nichols opined that his "prognosis for significant improvement over

6

the next 12 months is poor because of the lack of resources for treatment or evaluation." R. 301. She diagnosed Stone with panic disorder without agoraphobia, major depressive disorder, and traumatic brain injury. R. 300. And she found that he does have deficits which would interfere with his ability to relate interpersonally, withstand the pressures of everyday work, and remember and carry out instructions. R. 301. Nichols also concluded that Stone's anxiety would interfere with his ability to maintain concentration, persistence, and pace. R. 301.

State agency psychological consultant Robert Estock did not examine Stone but did review his medical records in reaching an opinion on August 25, 2015. R. 107–16. Estock opined that Stone was mildly restricted in his activities of daily living; moderately limited in his ability to maintain social function; and moderately limited in his ability to maintain concentration, persistence, and pace. Estock also determined that Stone had a moderate ability to understand, remember, and carry out detailed instructions, to maintain attention and concentration for extended periods, to work with others without being distracted, to interact appropriately with the general public, to accept instruction and criticism from supervisors, to respond appropriately to changes in the work setting, to travel in unfamiliar places or use public transportation, and to set realistic goals or make plans independently of others. R. 30–31. He found that Stone would likely miss work one to two days per month due to psychologically based symptoms. R. 115.

7

The ALJ did not ask Stone about his mental health at the hearing on July 10, 2017, but Stone's attorney did. Stone testified that he does not go to the store, church, or participate in any social activities because he has trouble being around people. R. 52. When asked whether he had depression or anxiety, Stone answered, "Well, they thought I might have did." R. 53. His attorney followed up, "You don't like to talk about it?" Stone responded, "No." R. 53. However, Stone did admit that he cries "pretty much" every day. R. 53. He also testified that he has trouble keeping his mind focused on what he is doing. R. 54. In addition to eliciting this testimony, Stone's attorney argued that the "psychological consult indicated some significant psychological problems." R. 45.

At the hearing, the ALJ posed the following hypothetical to a vocational expert ("VE"):

> Assume . . . [a] younger individual with a marginal education . . . who can perform . . . light work with the following limitations. He should be restricted to simple, repetitive, non-complex tasks, no contact with the general public, no driving, no climbing, he can occasionally stoop and crouch and he should . . . have primarily oral job instructions.

R. 63. The VE determined that this hypothetical individual could find light work in the national economy. R. 63. Specifically, the VE offered that the individual could work as a marker, a folder, and an inspector/hand packager. R. 63–64. The VE found that this individual could not work as a welder's helper or carpet layer. R. 64. The ALJ then asked whether that same individual could perform work as a marker,

8

folder, or inspector/hand packager if he could never stoop or crouch. R 65. The VE determined that this individual could still perform those jobs. R. 65. The ALJ asked whether the hypothetical individual could perform those jobs if limited to sitting and standing for 20 minutes, to which the VE responded affirmatively. R. 65–66. The VE also testified that the hypothetical individual could work as a marker, folder, and inspector/hand packager even if he was off task for 10 percent to 15 percent of the day, so long as he remained at his workstation. R. 66. The VE reported that this individual could not perform light work if he needed to lie down and take scheduled rest breaks outside of the normal workday breaks. R. 66.

Stone's attorney asked the VE whether work as a marker, folder, or inspector/hand packager required an employee to be able to remember, understand, and carry out work-related instructions. R. 67. The VE answered, "Yes." R. 67. The VE also confirmed that an employee in these positions would have to maintain concentration, persistence, and pace while working. R. 67.

The ALJ issued his decision on October 4, 2017. R. 34. He found that Stone suffers from the severe impairments of lumbar pain and hypertension under 20 C.F.R. § 416.920(c). R. 27. The ALJ found that these "impairments [were] established by objective medical evidence and cause more than minimal functional limitations on the claimant's ability to perform work-related duties on a sustained basis." R. 27. But the ALJ concluded at step three of the analysis that none of

9

Stone's impairments, nor a combination of his impairments, satisfied or medically equaled the severity of one of those listed in the applicable regulations. R. 27. At steps four and five, the ALJ found that Stone had the residual functional capacity ("RFC") to perform a limited range of light exertional work. R. 28. Specifically, the ALJ found that Stone could perform lightwork that allowed for simple, non-complex tasks, no contact with the general public, no driving, no climbing, occasional stooping and crouching, and primarily oral job instructions. R. 28.[3]

Ultimately, the ALJ determined that Stone is unable to perform any past relevant work. R. 31. But considering Stone's age, education, work experience, and RFC, he found that there are jobs that Stone can perform that exist in significant numbers in the national economy. R. 32. Therefore, the ALJ concluded that Stone is not disabled within the meaning of the Social Security Act. R. 34. Based on these findings, the ALJ denied Stone's claims. R. 33–34.

In reaching this conclusion, the ALJ assigned no weight to the opinion of licensed psychologist June Nichols. R. 30. The ALJ assigned no weight to Dr. Nichols' opinion for the following reasons:

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

> There is no indication in the medical record that the claimant was treated for a traumatic brain injury. While the claimant acknowledged depression in the Med-Assist treatment notes, there are no mental health treatment notes to indicate any diagnosis and treatment for a mental disorder, and the treatment reports from Med-Assist consistently note no observed anxiety, delusion, loose associations, flight of thought, stressed faces and/or weeping from December 2015 through March 2017. Additionally, the claimant did not allege a mental disorder in applying for benefits.

R. 30 (record citations omitted).

The ALJ also assigned no weight to the opinion of state-agency psychologist Robert Estock. R. 30. The ALJ discounted Dr. Estock's opinion because

> [m]edical evidence entered into the record since these mental evaluations[] are absent any diagnosis or treatment for mental disorder, and do not provide a basis for finding greater than minimal limitations resulting therefrom.

R. 31.

## IV. DISCUSSION

Stone's attorney frames the four issues on appeal as follows: (1) the ALJ "refused to consider claimant's mental limitations and restrictions because claimant, with a 6th grade special education, failed to allege a mental disorder on his initial application"; (2) the ALJ "refused to accord proper weight to the opinions of two consultative physicians provided by the Commissioner, including Dr. June Nichols, the examining psychologist, and Dr. Estock, the consulting psychologist[, and the ALJ] failed to state with at least 'some measure of clarity' grounds for his decision in repudiating the opinions"; (3) "ALJ Munford has a recorded history of rejecting

11

the opinions of consulting psychologists and substituting his opinion for opinions of psychologists"; and (4) the "decision was not based on substantial evidence." Doc. 9 at 2. As to the second argument, Stone relies on *Wilder v. Chater*, 64 F.3d 335 (7th Cir. 1995). Doc. 9 at 13–19. The court agrees that the ALJ's decision to disregard the opinions of Estock and Nichols is not supported by substantial evidence, and as a result any discussion of the remaining arguments is pretermitted.

"In evaluating medical opinions, the ALJ considers many factors, including the examining relationship, the treatment relationship, whether the opinion is amply supported, whether the opinion is consistent with the record and the doctor's specialization." *Kelly v. Comm'r of Soc. Sec.*, 401 F. App'x 403, 407 (11th Cir. 2010) (citing 20 C.F.R. §§ 404.1527(d) & 416.927(d)). The opinions of examining physicians are given more weight than those of non-examining physicians, and the opinions of treating physicians are given substantial weight unless the ALJ shows good cause for not doing so. *See id.* "The opinions of non-examining, non-reviewing physicians, are entitled to little weight when contrary to those of an examining physician, and taken alone, they do not constitute substantial evidence." *Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 901 (11th Cir. 2012). But the "ALJ is not allowed to make medical findings or indulge in unfounded hunches about the claimant's medical condition." *Smith v. Astrue*, 641 F. Supp. 2d 1229, 1233 (N.D. Ala. 2009). In any event, "the ALJ must state with particularity the

weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

Stone's case "bears a remarkable resemblance to the situation in *Wilder*." *Haag v. Barnhart*, 333 F. Supp. 2d 1210, 1217 (N.D. Ala. 2004). In *Wilder*, 64 F.3d at 337, the Seventh Circuit reversed the ALJ's decision because the ALJ rejected the opinion of the only mental health expert who gave an opinion on the claimant's condition. In 1990, after winning the lottery and after adopting her grandson, the claimant, Rosie Wilder, applied for disability insurance benefits, alleging she became disabled in 1986. *Id.* at 336. The ALJ appointed a psychiatrist to evaluate Wilder, and that psychiatrist determined that Wilder was disabled by the end of 1986. *Id.* No other medical evidence about Wilder's mental health was in the record. *Id.* at 336–37. Yet the ALJ rejected the psychiatrist's opinion that Wilder was disabled in 1986. *Id.* In reaching that conclusion, the ALJ "pointed out that Wilder's medical records did not mention depression or other mental illness, that the records referred to her having 'retired' from her job as a security guard, that she probably would not have been permitted to adopt a child had she been suffering from major depression, and that her daughters believed that her condition had gotten worse in 1988 and

1989, implying that it was less severe in 1986." *Id.*

Finding these reasons "singly and together unimpressive," the Seventh Circuit was suspicious of the ALJ's decision to discount the only medical evidence "concerning the critical issue of the date of onset." *Id.* at 337. As the court explained, "[t]he salient fact of record is the testimony of the psychiatrist, a disinterested as well as expert witness." *Id.* The court further noted that the other "medical records were of purely physical ailments for which Wilder had sought help, and there is no reason to expect a doctor asked about . . . back pain . . . to diagnose depression." *Id.* The court pointed out that such a doctor "may not even be competent to diagnose it." *Id.* As the court noted, depression is a mental illness on which psychiatrists are the experts, and "the uncontradicted evidence of the only disinterested expert to opine upon it is entitled to considerable weight." *Id.* Ultimately, the court found that the ALJ unreasonably rejected the only mental health opinion in the record. *Id.*

Although the Eleventh Circuit has considered *Wilder*, it has yet to find *Wilder* applicable to a case under consideration. *See Arnold v. Soc. Sec. Admin., Comm'r*, 724 F. App'x 772, 779 (11th Cir. 2018) (finding *Wilder* inapplicable where the record contained multiple medical opinions about the pertinent issue); *Bush v. Soc. Sec. Admin, Comm'r*, 770 F. App'x 490 (11th Cir. 2019) (finding *Wilder* distinguishable where the ALJ assigned little weight to a psychologist's opinion as opposed to disregarding it entirely); *Jackson v. Soc. Sec. Admin., Comm'r*, 2019 WL

3407175, at *4 (11th Cir. July 29, 2019) (finding *Wilder* inapposite where the ALJ did not reject the only medical evidence regarding the claimant's impairments).

The court acknowledges that the Eleventh Circuit has "decline[d] . . . to adopt the standard set forth by the Seventh Circuit in *Wilder*," because the Circuit has "articulated [its] own standard for reviewing the opinions of agency-appointed consulting physicians." *Jackson*, 2019 WL 3407175, at *4. In the Eleventh Circuit, "the opinion of a physician who examined a claimant on only one occasion [like Stone and Nichols] is not entitled to great weight." *Id*. (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004)). The court interprets *Jackson* as a rejection of the notion that "the uncontradicted evidence of the only disinterested expert to opine upon [an issue] is entitled to considerable weight." *Wilder*, 64 F.3d at 337. Though the Eleventh Circuit did not adopt this particular standard, the court finds *Wilder*'s rationale to be persuasive.

Several courts in this district have encountered *Wilder*. Many found *Wilder* distinguishable because the record contained multiple opinions by mental health experts. *See White v. Berryhill*, 2018 WL 4335533, at *9 (N.D. Ala. Sept. 11, 2018) (finding that the facts of *Wilder* did not correspond with the plaintiff's case where the ALJ afforded limited weight to the consultative examiner and more than one opinion about plaintiff's psychiatric health existed); *Bell v. Colvin*, 2015 WL 4656362, at *13 n.15 (N.D. Ala. Aug. 6, 2015) (finding *Wilder* inapplicable where

15

the ALJ did not completely reject the opinion of the psychologist and where the ALJ relied also on the opinions of two psychiatrists and one therapist); *Hearn v. Colvin*, 2014 WL 4809421, at *6 (N.D. Ala. Sept. 26, 2014) (finding that the ALJ properly relied on the opinion of one psychologist to reject the opinion of another, unlike in *Wilder*); *Polk v. Colvin*, 2013 WL 4045755, at *4 (N.D. Ala. Aug. 9, 2013) (finding *Wilder* distinguishable because even though the ALJ assigned little weight to the opinion of one psychologist she assigned great weight to the differing opinion of another psychologist).

Other district courts in the Eleventh Circuit, however, have been presented with facts indistinguishable from *Wilder*. For example, in *Carril v. Barnhart*, 201 F. Supp. 2d 1191 (N.D. Ala. 2002) (citing 42 U.S.C. § 421(h) and *Wilder*, 64 F.3d at 337), the court concluded that the "rejection of the only medical evidence of a mental health impairment is not substantial evidence to support the [ALJ's] finding that Plaintiff did not suffer a mental impairment." In *Carril*, a consultative doctor diagnosed the plaintiff with major depressive disorder and chronic pain. *Id.* This was "the only evidence provided by a mental health professional relating to the impairment," but the ALJ rejected the opinion and found that the plaintiff did not suffer from a mental impairment. *Id.* The court held that the decision to reject the sole opinion provided by a mental health professional was not supported by substantial evidence. *Id.* at 1192.

Likewise, in *Cooke v. Colvin*, 2014 WL 110510, at *11 (S.D. Ala. Jan. 8, 2016), the court held that substantial evidence did not support the ALJ's decision to reject the opinion of a neuropsychologist "in the absence of competing medical opinions." After conducting an examination, the neuropsychologist in *Cooke* diagnosed the claimant with adjustment disorder with depressed mood, moderate to severe reading disorder, disorder of written expression, and borderline intellectual function. *Id.* at *4. The neuropsychologist also found that the claimant's cognitive defects could interfere with vocational activity, that his depression was a severe impairment, and that he faced limitations in his ability to respond to customary work pressures and to maintain attention, concentration, or pace for at least two hours. *Id.* Despite being presented with this opinion—the only opinion by an examining mental health specialist, and one who regularly provided evaluations in disability matters—the ALJ rejected the neuropsychologist's findings. *Id.* at *7.

The court found that the ALJ was swayed by the fact that mental health problems did not reveal themselves during the course of examinations that primarily assessed the claimant's physical impairments. *Id.* at *8 ("The medical evidence of record noted by the ALJ as 'strongly contradicting' Dr. Goff's opinion regarding Cooke's mental impairments consists of cursory statements made by other physicians in the course of primarily assessing physical impairments, seemingly made in passing and based on little more than the physicians' observations of

17

Cooke's demeanor at the time."). The court also noted that the ALJ was persuaded by the lack of psychiatric treatment and the facts that the claimant did not report mental health symptoms to health care providers and his disability application did not allege depression. *Id.* at *8. Finding the situation "strikingly similar" to *Wilder*, the court determined that "[w]hile the ALJ was entitled to cast some suspicion . . . [he] was not entitled to disregard [the opinion] absent substantial contrary evidence." *Id.* at *10–11. The court held that the decision to reject the neuropsychologist's opinion was not supported by substantial evidence because there was no medical testimony to rebut the opinion. *Id.* at *11.

The same is true here. Dr. Nichols and Dr. Estock were the only mental health professionals to give an opinion about Stone's mental health. They both acknowledged that he suffered from psychologically based symptoms (R. 115 & 301), and they both opined that this would interfere with his ability to carry out instructions and maintain concentration. R. 114 & 301. The ALJ disregarded their opinions because Stone had not undergone treatment for a mental disorder, because treatment reports from physical evaluations did not indicate any mental health problems, and because Stone did not allege a mental disorder when applying for benefits. R. 30–31. These reasons are insufficient. *See Cooke*, 2016 WL 110510, at *8–11; *Haag*, 333 F. Supp. 2d at 1219 ("[I]t was unreasonable to reject [psychiatrist's] opinions based upon the lack of a diagnosis or notation of mental

illness by her medical doctors who saw her for specific physical problems."). It was error for the ALJ to assign no weight to the opinions of Nichols and Estock in the absence of competing opinions by other mental health specialists. As a result, the ALJ's decision to reject the only evidence by mental health professionals is not supported by substantial evidence.[4]

## V.  CONCLUSION

Based on the foregoing, the undersigned concludes that the Commissioner's decision is not supported by substantial evidence. It is therefore ORDERED that the decision of the Commissioner denying benefits is REVERSED and this matter is REMANDED to the Administrative Law Judge for the purpose of issuing a new disability determination consistent with this opinion.

A final judgment will be entered separately.

DONE and ORDERED on September 18, 2019.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE

---

[4] A cursory review of ALJ Munford's prior cases reveals a series of district court reversals on this very issue. *See Smith v. Astrue*, 641 F. Supp. 2d 1229 (N.D. Ala. 2009); *Wild v. Astrue*, 591 F. Supp. 2d 1155 (N.D. Ala. 2008); *Barber v. Barnhart*, 459 F. Supp. 2d 1168 (N.D. Ala. 2006); *Davis v. Barnhart*, 377 F. Supp. 2d 1160 (N.D. Ala. 2005); *Haag v. Barnhart*, 333 F. Supp. 2d 1210 (N.D. Ala. 2004).